UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL LOVERING, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-10067 |
| | * | |
| STATE OF MASSACHUSETTS, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER

May 20, 2016

### I. Introduction

Plaintiff Michael Lovering challenges the denial of his application for a Massachusetts firearms license. In his Complaint, which names the State of Massachusetts as the lone defendant, Mr. Lovering alleges that his application was denied because he was found to be an "unsuitable person." [ECF No. 1 ¶ 2]. He contends that this denial violates his equal protection, substantive due process, and Second Amendment rights. Other than stating that he was denied a license after being found unsuitable, Mr. Lovering's Complaint does not contain any factual details, including when he applied, when and how he was notified of the unsuitablity finding, or what specific reasons, if any, were given for the determination. On February 16, 2016, the Commonwealth moved to dismiss the Complaint, arguing that it is barred by the Eleventh Amendment of the U.S. Constitution, fails to state a claim, and is foreclosed by the First Circuit Court of Appeal's decision in Hightower v. City of Boston, 693 F.3d 61 (1st Cir. 2012). [ECF

Nos. 7-8]. Mr. Lovering filed his opposition on February 29, 2016. [ECF No. 10].[1] For the reasons stated herein, the Motion to Dismiss is granted and the Complaint is dismissed without prejudice.

**II.  Legal Background**

"It is generally a crime under Massachusetts law to carry a firearm without having the appropriate license or FID card, or being exempt from licensing." Hightower v. City of Boston, 693 F.3d 61, 65 (1st Cir. 2012). A Firearm Identification Card ("FID card") only "allows the holder to own, transfer, or possess a firearm in his residence or place of business." Commonwealth v. Gouse, 461 Mass. 787, 799 n.14 (2012); see also Chardin v. Police Comm'r of Boston, 465 Mass. 314, 315 n.5 (2013) ("Although an FID card allows its holder to own or possess a firearm within the holder's residence or place of business, it does not allow the holder to carry the firearm to or in any other place."). Massachusetts' two licenses to carry, however—Class A and Class B licenses—"enable[] the holder to carry a firearm outside of his residence or place of business." Gouse, 461 Mass. 787, 799 n. 14; Mass. Gen. Laws § 131. A Class A license entitles "a holder thereof to purchase, rent, lease, borrow, possess and carry: (i) firearms, including large capacity firearms, and feeding devices and ammunition therefor . . . ; and (ii) rifles and shotguns, including large capacity weapons, and feeding devices and ammunition therefor . . ." Mass. Gen. Laws ch. 140, § 131(a). A Class B license is less permissive; it entitles a holder to "purchase, rent, lease, borrow, possess and carry: (i) non-large capacity firearms and feeding devices and ammunition therefor . . . ; and (ii) rifles and shotguns, including large capacity rifles and shotguns," and, unlike the Class A license, does not entitle the holder to

---

[1] Mr. Lovering filed his opposition as a "Motion to Proceed Forward." [ECF No. 9]. That motion is terminated with this Memorandum and Order.

"carry or possess a loaded firearm in a concealed manner in any public way or place." Mass. Gen. Laws ch. 140, § 131(b).

Mr. Lovering does not specify what type of license he applied for. Because there is no "suitable person" requirement for the issuance of an FID card, however, the Court assumes that he applied for either a Class A or B license, both of which are governed by the same application procedure and eligibility requirements. Hightower, 693 F.3d at 66.

A person seeking a Class A or B license must file an application with a "licensing authority," defined as "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them." Mass. Gen. Laws ch. 140, § 121. Several categories of applicants are automatically ineligible for a Class A or B license, including felons, persons under 21 years old, and others. Mass. Gen. Laws ch. 140, § 131(d)(i)-(x); see also Ruggiero v. Police Comm'r of Boston, 464 N.E.2d 104, 107 (1984) ("§131 describes those persons who, because of immaturity, antisocial behavior, or status as an alien, are deemed improper persons to obtain licenses."). If an applicant does not fall under one of these excluded categories, the licensing authority may still deny the application if it "determines that the applicant or licensee is unsuitable to be issued or to continue to hold a license to carry." Mass. Gen. Laws ch. 140, § 131(d). The licensing authority's unsuitability determination must be based on either: (1) "reliable and credible information that the applicant . . . has exhibited or engaged in behavior that suggests that, if issued a license, the applicant . . . may create a risk to public safety"; or (2) "existing factors that suggest that, if issued a license, the applicant . . . may create a risk to public safety." Id. This suitability review "allows licensing authorities to keep firearms out of the hands of persons who are not categorically disqualified, . . . but who nevertheless pose

a palpable risk that they would not use a firearm responsibly if allowed to carry in public." Chief of Police of City of Worcester v. Holden, 470 Mass. 845, 854 (2015).

When a licensing authority denies an application based on an unsuitability finding, it must notify the applicant in writing of the specific reasons for the determination. Mass. Gen. Laws ch 140, § 131(d). This determination is subject to judicial review in the state district court with jurisdiction over the city or town where the application was filed. Id. § 131(f). A state judge, "after an evidentiary hearing, may direct that a license be issued to the petitioner if the judge finds that there was 'no reasonable ground' for denying such license, and that the petitioner 'is not prohibited by law from possessing [the] same.'" Chardin, 465 Mass. at 317 (quoting Mass. Gen. Laws ch. 140, § 131(f)).

### III.   Analysis

Setting aside for now the vagueness of the Complaint, all of Mr. Lovering's claims against the Commonwealth of Massachusetts are barred by the Eleventh Amendment. It is well established that any federal court lawsuit "in which the State or one of its agencies is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); see also O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies."). There are two exceptions to a State's Eleventh Amendment immunity: first, "Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power," and second, "a State may waive its sovereign immunity by consenting to be sued in federal court." Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003). Neither exception applies here. Mr. Lovering asserts his constitutional claims against

the Commonwealth under 42 U.S.C. § 1983,[2] which does not abrogate state immunity by expressly authorizing a suit in federal court. Soares v. Mass. Dep't of Youth Servs., No. CIV.A. 12-10573-DJC, 2013 WL 5211556, at *3 (D. Mass. Sept. 12, 2013) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)). Further, the Commonwealth has not consented to Mr. Lovering's § 1983 claims. Accordingly, all claims against the Commonwealth of Massachusetts are barred by the Eleventh Amendment.

In his opposition to the Motion to Dismiss, Mr. Lovering proposes amending his Complaint to name a state official as a defendant, rather than the state itself. [ECF No. 10 at 4]. "The Eleventh Amendment is not a bar to the naming of a state official, rather than the state or agency, as a defendant." Baker, 210 F.3d at 47. A state official can be named as a defendant in one of two ways. First, a state official may be named in the officer's official capacity in a suit for prospective declaratory or injunctive relief under federal law. Mills v. Maine, 118 F.3d 37, 53 (1st Cir. 1997) (discussing Ex Parte Young, 209 U.S. 123 (1908)); see also Johnson v. Patrick, No. CIV.A. 09-11543-RGS, 2011 WL 2669067, at *2 (D. Mass. July 7, 2011) ("While the Eleventh Amendment prevents the bringing of a suit against a State in federal court, it does not prohibit suits against State officers acting in their official capacity when a party seeks prospective equitable relief from a continuing violation of federal law."). The purpose of this exception to the Eleventh Amendment is "to prevent continuing violations of federal law, but not to remedy past violations." Greenless v. Almond, 277 F.3d 601, 607 (1st Cir. 2002). Second, a plaintiff may name state officials in their individual capacities to recover damages. Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 108 (1st Cir. 2015); Morgan v. Middlesex Sheriff's

---

[2] Mr. Lovering does not cite to 42 U.S.C. § 1983 in his Complaint, but the Court interprets his Complaint as alleging claims under § 1983, which authorizes suits against state officials for violations of constitutional rights. Camreta v. Greene, 563 U.S. 692, 705 (2011).

Office, No. CA 14-10659-IT, 2014 WL 4104173, at *4 (D. Mass. Aug. 13, 2014) ("The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities.") (citing Kentucky v. Graham, 473 U.S. 159, 165-167 (1985)). "In order to properly bring a claim under 42 U.S.C. § 1983 against an individual defendant, a party must allege personal involvement of the defendant in the purported constitutional violation." Morgan, 2014 WL 4104173, at *4; see also Greene v. Cabral, No. CV 12-11685-DPW, 2015 WL 4270173, at *8 (D. Mass. July 13, 2015) (noting that for individual capacity claims, "the plaintiff must show that the defendant had a direct connection to the misconduct"). Accordingly, if Mr. Lovering wishes to pursue this action, he must amend the Complaint to include the appropriate state defendant(s), in their official or individual capacities, depending on the remedy sought (damages or injunctive relief).

Even if Mr. Lovering amended his Complaint, however, to overcome the Eleventh Amendment's restrictions on litigation against a state, it would still likely not survive a motion to dismiss in its current form. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

First, the instant Complaint does not contain sufficient facts to support the allegations. If Mr. Lovering intends to challenge the license application process as applied to him, his Complaint must contain additional details, such as to whom Mr. Lovering applied and what reasons, if any, were given for the denial. An as-applied challenge must contest a statue in a "in a concrete factual setting." McGuire v. Reilly, 260 F.3d 36, 47 (1st Cir. 2001); see Kines v. Day,

754 F.2d 28, 30 (1st Cir. 1985) ("[C]hallenging a rule as applied often requires more specific allegations of harm than are necessary to test facial validity."). Further, Mr. Lovering alleges that "Massachusetts refuses to issue me a firearms license for the sole reason that they find me an 'unsuitable person'" and that the suitable person standard "has been used in the past by some states for racism and discrimination." [ECF No. 1 ¶¶ 2-3]. The Complaint, however, does not contain any allegations that specifically support the claim that the denial of Mr. Lovering's application was motivated by racism or discrimination.

Second, if Mr. Lovering intends to advance a facial challenge to Massachusetts' licensing scheme (i.e. that it is always unconstitutional), it is again unlikely to withstand a motion to dismiss, even with a more detailed complaint. This requires Mr. Lovering to establish that there are "no set of circumstances" under which the suitability standard would be valid, or that it lacks "any 'plainly legitimate sweep,'" United States v. Stevens, 559 U.S. 460, 472 (2010), which is improbable, given the holding in Hightower v. City of Boston. 693 F.3d 61 (1st Cir. 2012). In Hightower, the First Circuit denied both as-applied and facial challenges to the suitability standard. Id. at 71-83. The plaintiff's Class A license had been revoked after she was found to be unsuitable for having inaccurately answered a question on her license renewal form. Id. at 65. She claimed that the suitability review process violated her Second Amendment, equal protection, and procedural due process rights.[3] Id. The First Circuit rejected her claims, finding that the suitability standard does not unconstitutionally confer too much discretion on the licensing authority and is sufficiently connected to valid government interests. Id. at 78. ("Because Hightower has not shown that the statute lacks any plainly legitimate sweep, her facial

---

[3] Although Hightower involved a revocation, not a denial, the same suitability review process applies to revocations as denials. Mass Gen. L. ch. 140, § 131(d).

attack fails."). The Hightower case reviewed an earlier version of the statute than that at issue in this case, but since the earlier version conferred even more discretion to the licensing authority,[5] Hightower's holding that the suitability standard is constitutional still controls.[6]

In addition, more recently, in Chief of Police of City of Worcester v. Holden, the Massachusetts Supreme Judicial Court also denied an applicant's as-applied and facial challenges to the suitable person standard, where the applicant was found unsuitable based on his history of domestic violence. 470 Mass. 845, 854 (2015). In rejecting the Second Amendment claim, the SJC recognized that "the right to carry in public implicates more peripheral Second Amendment concerns than keeping and bearing arms in the home." Id. at 857-858. It also denied plaintiff's vagueness and overbreadth challenges, finding that the suitable person standard was sufficiently related to the government's interest in public safety. Id. at 851-863 ("The suitability standard works in tandem with the disqualifying provisions of the statute to reasonably prevent lethal firearms from falling into the hands of persons likely to misuse them."). Given that both the First Circuit and SJC have already reviewed the concept of "suitability," and found it acceptable, it is unlikely that Mr. Lovering will be able to establish that no set of circumstances exists under which the law is valid.

---

[5] At the time Hightower was decided, Mass. Gen. Laws ch. 140, § 131 did not contain the definition of "unsuitability" that is currently found in § 131(d). Hightower, 693 F.3d at 78 (noting that § 131(d) did "not define what constitutes 'a suitable person to be issued' a firearms license").

[6] To the extent Mr. Lovering intends to challenge the Massachusetts licensing scheme generally, he is also unlikely to prevail. See Powell v. Tompkins, 783 F.3d 332, 348 (1st Cir. 2015) (noting that "any individual right 'in carrying concealed weapons outside the home is distinct from [the] core interest emphasized in Heller,' and . . . under Heller, '[l]icensing of the carrying of concealed weapons is presumptively lawful.'"); see also O'Connell v. Walsh, No. CV 15-10096-DJC, 2015 WL 9581735, at *3 (D. Mass. Dec. 30, 2015) ("Although the level of judicial scrutiny Second Amendment claims are entitled is somewhat unsettled, the government's authority to regulate the possession and storing of firearms is well-established as a matter of constitutional law.").

## IV. Conclusion

As more fully discussed above, the Court grants the Defendant's pending Motion to Dismiss [ECF No. 7] because the State of Massachusetts is immune from suit under the Eleventh Amendment. If Mr. Lovering wishes to pursue this action further, he should file an amended complaint that names the appropriate defendant(s) and contains additional factual allegations. The Court also notes that, though the time to do so may have passed, Mr. Lovering is entitled to judicial review in state court of the licensing authority's unsuitability determination, and this litigation might be more appropriately pursued there. See Mass. Gen Laws ch. 140, § 131(f).

**So Ordered.**

Dated: May 20, 2016

                                            /s/ Allison D. Burroughs
                                            ALLISON D. BURROUGHS
                                            U.S. DISTRICT COURT JUDGE